**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action Number 1:20-cv-02167-RM-NYW

KHALED ALALI,
    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
    Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (b)(6)**

---

    Defendant's Motion to Dismiss should be denied because is based on the false premise that checking accounts with overdraft protection are not considered "credit" under the Equal Credit Opportunity Act (ECOA). Because Defendant's premise is false, the remainder of its argument crumbles. Moreover, a valid arbitration agreement between the parties requires this Court to send this matter to arbitration, and the arbiter should decide the merits of Defendant's Motion to Dismiss.

**ARGUMENT**

**I.**    **Defendant's Motion to Dismiss Should be Decided by an Arbiter**

    As a preliminary matter, Plaintiff has filed a Motion to Compel Arbitration. *Doc. 16*. Once the Court determines that a valid arbitration agreement exists, then the proper procedure is to stay the proceeding, not to dismiss. *Adair Bus Sales, Inc. v. Blue Bird Corp*., 25 F.3d 953, 955 (10th Cir. 1994) (stating that, upon a motion to stay pending arbitration, the "proper course . . . would have been for the district court to grant Defendant's motion and stay the action pending

arbitration" rather than to dismiss); *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-39 (10th Cir. 1987) ("Section 3 of the Federal Arbitration Act contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time, thus preventing any impairment of the [*4] plaintiffs' rights to seek relief.").

Thus, the correct procedure is that the Court should grant Plaintiff's Motion to Compel Arbitration, and stay the proceedings while the parties go to arbitration. The Defendant's Motion to Dismiss should be decided by the arbiter.

## II.     Checking Accounts Are Considered Credit Under the ECOA

Under the ECOA, credit is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." *15 U.S.C. § 1691a(d)*. Checking accounts easily meet this definition because they can become overdrawn or have a negative balance when the bank pays more money in checks or debit card transactions than the balance, commonly called "overdraft protection."

In 1982, Judge Kane ruled that savings accounts were not subject to the ECOA because they do not come with overdraft protection. *Dunn v. Am. Express Co.*, 529 F. Supp. 633, 634 (D. Colo. 1982) (She concedes that it did not have any overdraft privileges). This case is the opposite of *Dunn* – this checking account came with overdraft protection. *Ex. B, p. 9 of 24* (describing how Chase may pay an overdraft, and if there is not enough money in savings to transfer to checking, your checking account will become overdrawn, and you will be charged Insufficient Funds Fees)*; see also Id. at p. 11 of 24* (discussing how Defendant has discretion to authorize a debit card transaction to cause an account to be overdrawn). Simply put, if a checking account becomes "overdrawn", that is a debt that the account holder owes to the bank, is subject

to interest, and is deferred until later.  This easily satisfies the definition of "credit" under the ECOA.   The point is further demonstrated by the following statement in the terms and conditions:

> **3. Your responsibility to repay overdrafts**
> You must immediately pay the amount of any overdraft along with any fees that apply. If you don't, you may be charged additional fees or interest. We also may report you to consumer reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future.
>
> You authorize us to use the money from any subsequent deposits to your account to pay any overdraft and resulting fees. Subsequent deposits include any federal or state benefit payments that you choose to deposit in any account (including direct deposit of Social Security benefits). You understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time.
>
> You agree to pay all costs and expenses we incur in collecting any overdraft. We may still pursue collection of the amount you owe (including suing you) after it is charged off.

*Ex. B,* p. 8 of 24.

The above paragraph from Ex. B clearly demonstrates that an overdraft can result in a "debt" owed to Chase by the consumer, and the failure to pay the debt could result in negative credit reporting, and even a lawsuit.  The elephant in the room that Chase fails to address is why pull Plaintiff's credit reports if not granting credit?  Why use a credit score as a factor in denying an application to open a checking account if the account involved no credit at all?  The answer is of course, that Chase knows its overdraft protection program constitutes "credit" and therefore wanted to pull Plaintiff's credit reports to assess Plaintiff as a credit risk for repaying a potential debt.

Chase's reliance on *Rudder v. Herriman*, No. 15-cv-01142-CBS, 2015 WL 7075403, at *3 (D. Colo. Nov. 13, 2015) is misplaced.  First, *Rudder* was a *pro se* case, and the issue was not properly briefed on the Plaintiff's side, whose pleadings were described as "riddled with irrelevant details and opinions" and "unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter.'"  *Id.*  Second, Judge Shaffer's broad statement that a "…checking account does not fall under this statutory definition of 'credit'" is not persuasive because it contains no analysis of the issue at all.  *See e.g. McDaniel v. Navient Sols. LLC (In re*

*McDaniel),* No. 18-1445, 2020 U.S. App. LEXIS 27687, at *28 (10th Cir. Aug. 31, 2020) (a summary analysis lacks the power to persuade), *citing McKenzie v. U.S. Citizenship & Immigration Servs., Dist. Dir*., 761 F.3d 1149, 1158 (10th Cir. 2014) (stating that "[w]e do not consider these decisions persuasive in their application of § 334.16(b)" because they "state[] without analysis that § 334.16(b) governs").  Moreover, Judge Shaffer cited to the *Dunn* case for the proposition that checking accounts do not meet the definition of credit, when in fact, *Dunn* held that an ATM card used to withdraw cash is not credit.  *Dunn, supra*.

WHEREFORE, Plaintiff prays that the Court grant his Motion to Compel Arbitration, and allow the arbiter to decide the merits of Defendant's Motion to Dismiss, or alternatively, to deny Defendant's Motion to Dismiss.

Respectfully submitted,

By:  s/ Matthew R. Osborne
Matthew R. Osborne
11178 Huron Street, Suite 7
Northglenn, CO  80234
Telephone: (303) 759-7018
Email:  matt@mrosbornelawpc.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on 09/09/20, I served a true and correct copy of the Response to Motion to Dismiss via CM/ECF to:

All counsel of record

<u>s/ Mike Nobel</u>